1

**BLANK ROME LLP**
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
Erica R. Graves (SBN 301785)
erica.graves@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:   424.239.3400
Facsimile:    424.239.3434

2

3

4

5

6

7

*Attorneys for Defendant*
*FLOSPORTS, INC.*

8

9

**UNITED STATES DISTRICT COURT**

10

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

11

| | |
|---|---|
| LUCAS YOUNG, individually and on behalf of all other persons similarly situated, | Case No. 3:22-cv-04920-JSC |
| Plaintiff, | [*Assigned to Judge Jacqueline Scott Corley*] |
| v. | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| FLOSPORTS, INC., | |
| Defendant. | [*Filed concurrently with Declaration of Ozge Erturk and [Proposed] Order*] |
| | Date:       February 23, 2023 |
| | Time:       10 A.M. |
| | Place:      Courtroom 8—19th Floor |
| | Judge:      Hon. Jacqueline Scott Corley |
| | Complaint Filed: August 29, 2022 |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT/ CASE NO. 3:22-CV-04920-JSC**

**TO THIS HONORABLE COURT, AND PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 23, 2023, at 10 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102 in Courtroom 8, 19th Floor, Defendant FLOSPORTS, INC. ("FloSports") will and hereby does move to dismiss each and every cause of action in the Complaint filed by Plaintiff LUCAS YOUNG ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds set forth in the accompanying Memorandum of Points and Authorities, including that Plaintiff's Complaint fails to state a claim upon which relief can be granted and/or that Plaintiff lacks standing for the relief requested.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Ozge Erturk and the exhibits thereto, all of the papers on file with this Court, and upon such oral argument and/or documentary matters as may be presented to this Court at or before the hearing on this Motion.

DATED:  January 13, 2023          BLANK ROME LLP


                                  By: */s/ Ana Tagvoryan*
                                      Ana Tagvoryan
                                      Erica R. Graves
                                      *Attorneys for Defendant*
                                      *FLOSPORTS, INC.*

### ISSUES TO BE DECIDED

1.      Has Plaintiff plausibly alleged statutory standing under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. (the "UCL"), Cal. Bus. & Prof. Code § 17500 *et seq*., (the "FAL"), and California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*. (the "CLRA")?

2.      Has Plaintiff plausibly alleged that a reasonable consumer would likely be deceived in the manner alleged as is required to state a claim for relief under the UCL, FAL, and CLRA?

3.      Has Plaintiff adequately pled that FloSports violated California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600 *et seq*.?

4.      Has Plaintiff plausibly plead a claim for conversion?

5.      Has Plaintiff plausibly alleged the elements of unjust enrichment and is his claim otherwise duplicative of consumer protection claims and subject to dismissal on that basis as well?

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................9

II.     BACKGROUND AND ALLEGATIONS....................................................................10

        A.      Summary of Claims. ...........................................................................10

        B.      Plaintiff's Transaction.........................................................................11

III.    LEGAL STANDARD.............................................................................................13

IV.     ARGUMENT .......................................................................................................14

        A.      Plaintiff Cannot Assert Claims Under the UCL, CLRA, or FAL..........................14

                1.      Non-Compliance With the ARL Did Not Cause Plaintiff's Injury............14

                2.      Plaintiff Cannot Satisfy the Reasonable Consumer Standard...................15

        B.      FloSports Complied With the ARL. ....................................................................18

                1.      FloSports Disclosed the Terms of Its Automatically Renewing
                        Membership in Close Proximity to Its Request for Consent. ...................18

                2.      FloSports Obtained Affirmative Consent Prior to Completing the
                        Transaction...........................................................................................19

                3.      FloSports Provided Retainable Acknowledgement of the Offer Terms. ...20

                4.      FloSports Complied with The ARL In Good Faith. ...............................21

        C.      Plaintiff's Conversion Claim Fails........................................................................21

        D.      Plaintiff's Claim for Unjust Enrichment Fails. ....................................................22

        E.      Plaintiff Has No Standing to Seek Injunctive Relief. ...........................................23

V.      CONCLUSION....................................................................................................23

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
   802 F. Supp. 2d 1070 (N.D. 2011) ................................................................................23

*Arnold v. Hearst Magazine Media, Inc.*,
   No. 19-CV-1969-WQH-MDD, 2021 WL 488343 (S.D. Cal., Feb. 10, 2021) ......................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................14

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ....................................................................................23

*Bailey v. Rite Aid Corp.*,
   338 F.R.D. 390 (N.D. Cal. 2021) ...............................................................................17

*Baird v. Samsung Elecs. Am., Inc.*,
   522 F. Supp. 3d 679 (N.D. Cal. 2021) ........................................................................17

*Bell Ad. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................14, 15

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) ....................................................................................18

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) ......................................................................................14

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ..................................................................................16

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ....................................................................................24

*Doe v. SuccessfulMatch.com*,
   70 F. Supp. 3d 1066 (N.D. Cal. 2014) ........................................................................18

*Farmers Ins. Exchange v. Zerin*,
   53 Cal. App. 4th 44552 (1997) ..................................................................................23

*Freeman v. Indochino Apparel, Inc.*,
   443 F. Supp. 3d 1107 (N.D. Cal. 2020) ......................................................................17

*Great Pacific Sec. v. Barclays Capital, Inc.*,
   743 F. App'x. 780 (9th Cir. 2018) ..............................................................................18

*Hadley v. Kellogg Sales Co.*,
   273 F. Supp. 3d 1052 (N.D. Cal. 2017) ................................................................. 17

*Hall v. Time, Inc.*
   857 Fed. Appx. 385 (9th Cir., 2021) ......................................................... 19, 20, 21

*Hall v. Time, Inc.*
   No. SACV1901153CJCADSX, 2020 WL 2303088 (C.D. Cal., Mar. 13, 2020), *aff'd*, No. 20-
   55354, 2021 WL 2071991 (9th Cir. May 24, 2021) ............................................... 20

*Herrera v. Estee Lauder Cos., Inc.*,
   No. SACV 12-01169-CJC(ANx), 2012 WL 12507876 (S.D. Cal. Sept. 20, 2021) .........*passim*

*Houtchens v. Google LLC*,
   No. 22-CV-02638-BLF, 2022 WL 17736778 (N.D. Cal. Dec. 16, 2022) ........................ 19, 21

*Jenkins v. j2 Glob., Inc.*,
   No. 13-9226, 2014 WL 12687417 (C.D. Cal. May 23, 2014) ...................................... 22

*Johnson v. Pluralsight, LLC*,
   728 F. App'x 674 (9th Cir. 2018) ........................................................................ 15

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ............................................................................ 13

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ............................................................................... 15, 18

*Lanovaz v. Twinings N. Am., Inc.*,
   726 F. App'x 590 (9th Cir. 2018) ........................................................................ 24

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ............................................................................. 17

*Lopez v. Stages of Beauty, LLC*,
   307 F. Supp. 3d 1058 (S.D. Cal. 2018) ................................................................. 22

*Lopez v. YP Holdings, LLC*,
   No. CV188791-MWF, 2019 WL 6354387 (C.D. Cal. July 9, 2019) ............................. 15

*Mayron v. Google LLC*,
   54 Cal. App. 5th 566, 574 (2020) ........................................................................ 16

*McBride v. Boughton*,
   123 Cal. App. 4th 379 (2004) ............................................................................. 23

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
   96 F.3d 1151 (9th Cir. 1996) .............................................................................. 23

*Rahman v. Mott's LLP*,
   No. CV 13-3482 SI, 2014 WL 5282106 (N.D. Cal. Oct. 14, 2014) ............................. 24

6

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
    2020 WL 1245130 (N.D. Cal. Mar. 16, 2020)..........................................................................23

*Robbins v. PlushCare, Inc.*,
    No. 21-CV-03444-MMC, 2022 WL 2988344 (N.D. Cal. July 28, 2022) ...............................23

*Rojo v. Kliger*,
    52 Cal.3d 65 (1990) .............................................................................................................23

*Roz v. Nestle Waters N. Am., Inc.*,
    No. 216CV04418SVWJEM, 2017 WL 6942661 (C.D. Cal. Dec. 6, 2017) ............................22

*Rutter v. Apple Inc.*,
    No. 21-CV-04077-HSG, 2022 WL 1443336 .................................................................16, 21

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F.Supp.2d 942 (S.D. Cal. 2014).....................................................................................17

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .........................................................................................13, 14

*Thomas v. Home Depot USA Inc.*,
    527 F. Supp. 2d 1003 (ND. Cal. 2007) ..................................................................................23

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ..........................................................................................................16

*Turnier v. Bed Bath & Beyond Inc.*,
    517 F. Supp. 3d 1132 (S.D. Cal. 2021)..................................................................................23

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .................................................................................................13

*Voris v. Lampert*,
    7 Cal. 5th 1141, 1156 (2019) ................................................................................................23

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .................................................................................................17

**Statutes**

ARL ...........................................................................................................................*passim*

Cal. Bus. & Prof. Code § 17500 *et seq.* ................................................................................3, 10

Cal. Bus. & Prof. Code, § 17601(b)(2) .......................................................................................16

Cal. Bus. & Prof. Code § 17602(a)(2) ...................................................................................11, 20

Cal. Bus. & Prof. Code § 17602(a)(3) .........................................................................................21

Cal. Bus. & Prof. Code § 17604(b) .................................................................................22

Cal. Bus. & Prof. Code §§ 17600 *et seq.* ...................................................................3, 10

Cal. Civ. Code § 1750 *et seq.* .................................................................................3, 10

Cal. Bus. & Prof. Code § 17200 *et seq.* ...................................................................3, 10

FAL ..........................................................................................................................*passim*

UCL ..........................................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 8(a) .................................................................................................14

Federal Rules of Civil Procedure 12(b)(6) .......................................................2, 13, 14

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT/ CASE NO. 3:22-CV-04920-JSC**

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.    INTRODUCTION

3

4        Plaintiff Lucas Young ("Plaintiff") alleges he was tricked into paying $149.99 for an annual

5    subscription of FloSports Inc.'s ProGrappling broadcasting and streaming service. Plaintiff

6    inconsistently pleads both that he intended only to purchase a monthly plan or at least to purchase

7    a yearly plan without the automatic renewing feature. In either case, Plaintiff was not damaged.

8    First, documents incorporated by Plaintiff by reference show that Plaintiff was able to convert the

9    order to a monthly plan but failed to do so. Second, Plaintiff's yearly subscription offer never

10   renewed, meaning that his complaints about the renewal features of the order are irrelevant.

11        Accordingly, try as he may, Plaintiff cannot assert any viable claim for violation of

12   California's Automatic Renewal Law, Cal. Bus. & Prof. Code §§ 17600 *et seq*. ("ARL"), which

13   applies only to recurring charges, which Plaintiff did not have. Nor can Plaintiff maintain a claim

14   for unfair or fraudulent practices independent of the ARL, since Plaintiff's allegations demonstrate

15   that Plaintiff was not misled, objectively speaking, about the initial charge or what he was buying.

16   Thus, Plaintiff similarly cannot plead causes of action under California's Unfair Competition Law,

17   Bus. & Prof. Code § 17200, *et seq*. ("UCL"), California's False Advertising Law, Cal. Bus. & Prof.

18   Code §§ 17500, *et seq*. ("FAL"), or California's Consumers Legal Remedies Act, Cal. Civ. Code

19   §§ 1750, *et seq*. ("CLRA").

20        Even if the ARL somehow still applied to Plaintiff's order such that failure to comply with

21   same caused his injury (it did not), Plaintiff fails to allege how or why the disclosures, coupled with

22   the conspicuously linked Terms of Service, did not satisfy the ARL's disclosure requirements. They

23   did.

24        In light of the admissions and concessions made by Plaintiff, any effort to amend the

25   Complaint to state a viable claim would be futile. The Court should therefore, respectfully, dismiss

26   the Complaint without leave to amend.

27

28

1

## II.    BACKGROUND AND ALLEGATIONS

2

### A.    Summary of Claims.

3

Plaintiff's lawsuit was filed on August 29, 2022 and arises out of his purchase of FloSports'

4

FloGrappling annual subscription. Plaintiff complains that he was not placed on notice of certain

5

material terms associated with his purchase, including that he was enrolling in an automatically

6

renewing *annual* subscription or the cancelation policy that applied to his annual subscription. In

7

particular, Plaintiff complains that he believed he was signing up for a *monthly* plan. Based on this,

8

Plaintiff alleges that FloSports' subscription offers violate the ARL.[1] Because California's ARL

9

does not afford a private right of action, Plaintiff bootstraps the law to the UCL. Plaintiff also pleads

10

conversion, violation of California's FAL, violation of California's CLRA, and unjust

11

enrichment/restitution. The same allegations underpin each of the additional claims: the conversion

12

claim, which alleges that FloSports charged Plaintiff "without authorization and in violation of

13

California law," Compl., at ¶ 81; the FAL claim, which alleges that FloSports "intentionally" made

14

"untrue and misleading" statements "as part of a plan or scheme not to sell those services as

15

advertised," *id*. at ¶ 88; the CLRA claim, which alleges that FloSports deceptively advertised its

16

services as having characteristics they do not or advertising "goods" without the intent to sell them

17

as advertised, *id*. at ¶ 99; and the unjust enrichment/restitution claim, which asserts that "[r]etention

18

of those moneys under these circumstances is unjust and inequitable because Defendant's failure to

19

disclose material terms of the purchase agreement." Compl., ¶ 107.

20

Plaintiff seeks to represent "All persons in California who, within the applicable statute of

21

limitations period . . . incurred renewal fee(s) in connection with Defendant's [] Subscription

22

offerings." *Id*. at ¶ 49.

23

----

24

[1] The Complaint alleges that FloSports violates the ARL in three ways, by: "(i) failing to present
the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to

25

the request for consent to the offer before the subscription or purchasing agreement is fulfilled, in
violation of Section 17602(a)(1); (ii) charging consumers' Payment Method without first

26

obtaining their affirmative consent to the agreement containing the automatic renewal offer terms,
in violation of Section 17602(a)(2); and (iii) failing to provide an acknowledgment that includes

27

the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in
a manner that is capable of being retained by the consumer, in direct violation of Sections

28

17602(a)(3) and 17602(b)." Compl., ¶ 4.

1

**B.      Plaintiff's Transaction.**

2          While the Complaint is lengthy, allegations relating to Plaintiff's specific purchase are

3    sparse. In connection with the purchase, Plaintiff alleges that he saw a checkout page similar to:



*Id*. at ¶ 35.

          Plaintiff alleges, vaguely, that this page did not "disclose to Mr. Young all of the required

automatic renewal offer terms associated with the subscription program," including that it was a

recurring annual subscription that would automatically renew on a yearly basis unless it was

cancelled, and the cancellation policy. *Id*. at ¶¶ 6, 35–36. However, he concedes that the website's disclosures include (1) a large, bold, all caps statement that the subscription is "ANNUAL"; (2) a statement that the subscription is "$12.49/mo, $149.99 Paid Yearly"; and (3) a further statement that "by clicking Start Watching, you will be charged $149.99 today for the first year. Your annual subscription will automatically renew on [date] and each year thereafter until you cancel. For more details on our payment terms, click here [hyperlinked in red]." *Id*. at ¶ 35. The page links to FloSports' "Terms of Service" via a prominent red disclosure. *Id*. The terms in turn disclosed FloSports' "ongoing subscription and cancellation" policy in detail and provided instructions on how to cancel the subscription. Declaration of Ozge Erturk ("Erturk Decl."), Ex. 1.[2]

Plaintiff alleges that "Defendant enrolled Mr. Young into its year-long automatic-renewal subscription and, without Mr. Young's affirmative consent, charged Mr. Young's Payment Method for a full annual rate of $149.99 associated with his [] Subscription—resulting from Defendant's inadequate ARL disclosures and its deceptive Checkout Page design." *Id*. at ¶ 6.

The Complaint also references that Plaintiff received a confirmatory email following his subscription. Plaintiff alleges that this email "failed to provide Mr. Young with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Mr. Young's [] Subscription in a manner capable of being retained by him." *Id*. at ¶ 6. Thereafter, Plaintiff emailed FloSports "in order to

---

[2] The full terms, which Plaintiff cites to repeatedly in his Complaint, specifically outline all of the requisite terms and disclosures that Plaintiff claims are omitted or unclear, including a description of the cancellation policy that applies to the offer, and that the service is continuous. The Court may therefore consider FloSports' Terms of Service in existence on the date of Plaintiff's order for the purposes of this Motion. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (same). The purpose of this doctrine is to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (internal citations omitted). Here, Plaintiff's Complaint repeatedly references FloSports' Terms of Service. *See, e.g.*, Compl., ¶¶ 36, 39, 39 n.1, 40 n.1, 43.

avoid incurring any future charges in connection" with his subscription. *Id*. He states that he requested a refund, but FloSports did not provide one. *Id*. at ¶ 6.

Plaintiff's email actually stated that he "was looking to try out [FloSports] service on a month to month basis," but had been billed for a year. He further stated that he had read FloSports' terms and conditions prior to placing his order, but that "once [he] put in [his] information [he] was billed for the entire year." Erturk Decl., Ex. 2.[3]

Plaintiff tries to gloss over the fact that his yearly subscription never auto-renewed despite his failure to cancel his subscription.[4] Instead, Plaintiff alleges that had FloSports complied with the ARL with respect to the disclosures regarding renewal, Plaintiff "would not have subscribed to FS Subscription at all or on the same terms, or he would have canceled his FS Subscription earlier, i.e., prior to the expiration of the initial subscription." *Id*. at ¶ 6.

Plaintiff seeks restitution and an injunction, as well as unnamed "statutory" damages and attorneys' fees. Compl., Prayer.

## III.   LEGAL STANDARD

A complaint must consist of a short and plain statement showing the plaintiff is entitled to relief.  Fed. R. Civ. P. 8(a).  A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must accept factual allegations as true, this tenet is inapplicable to conclusory allegations, legal conclusions, unreasonable inferences, or unwarranted deductions of fact contained in the pleading. *Id*.; *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994). After stripping the "conclusory

---

[3] Likewise, the Court may consider the contents of Plaintiff's email to FloSports sent on or about August 14, 2021.  Plaintiff's Complaint refers to the email exchange and claims that it demonstrates that FloSports denied Plaintiff's request to cancel, while omitting the remainder of Plaintiff's admissions in that email. *See, e.g.*, Compl., ¶ 6. The Court may treat this document as incorporated into the Complaint for the purposes of this Motion. *See Swartz*, 476 F.3d at 763.

[4] Plaintiff does *not* allege that his subscription ever actually renewed, only that FloSports "attempted" to renew his subscription on August 20, 2022. *Id*. at ¶ 6.

13

statements" in the complaint, the remaining factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (quotations omitted).

## IV.    ARGUMENT

### A.    Plaintiff Cannot Assert Claims Under the UCL, CLRA, or FAL.

Plaintiff claims that, had FloSports complied with California's ARL disclosure requirements, he would not have purchased the annual subscription plan or would have cancelled it before it renewed. But, regardless of whether he knew to cancel, the subscription did not renew. All Plaintiff is left with is his initial order. Except that Plaintiff's $149.99 injury is not redressable in court under the claims asserted because (a) that injury was not caused by FloSports' alleged failure to comply with the ARL; and (b) no reasonable consumer would be misled in the manner alleged by Plaintiff.

#### 1.    Non-Compliance With the ARL Did Not Cause Plaintiff's Injury.

There is no private right of action under the ARL. *Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676-77 (9th Cir. 2018). As such, to maintain a claim based on the ARL, a plaintiff must prove an ARL violation as a predicate "unlawful" act under the UCL and must thus comply with the UCL's standing requirements. The UCL, like the FAL and CLRA, has standing requirements that require plaintiffs to (1) plead an economic injury, and (2) show that the injury was caused by the challenged/violative conduct. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (UCL and FAL); *Herrera v. Estee Lauder Cos., Inc.*, No. SACV 12-01169-CJC(ANx), 2012 WL 12507876, at \*2 (S.D. Cal. Sept. 20, 2021) (CLRA). Therefore, to be actionable, the alleged ARL violation must cause the plaintiff's injury.

Although the Complaint asserts a litany of supposed non-compliance with the ARL, including failure to disclose all the auto-renewal terms clearly and conspicuously, and failure to include certain disclosures in a separate acknowledgement, Plaintiff has no standing to complain about them because he was not harmed by such conduct. Plaintiff's subscription never renewed.  He would therefore have paid exactly the same amount had the recurring subscription terms and cancellation mechanism been more prominent. *See Lopez v. YP Holdings, LLC*, No. CV188791-MWF (MAAx), 2019 WL 6354387, at \*4 (C.D. Cal. July 9, 2019) ("A plaintiff fails to satisfy the

14

1    causation prong of the [UCL] if he or she would have suffered 'the same harm whether or not a

2    defendant complied with the [ARL].'"); *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir.

3    2015) ("To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure

4    was an immediate cause of the plaintiff's injury-producing conduct."); *In re Tobacco II Cases*, 46

5    Cal. 4th 298, 326 (2009) ("reliance is proved by showing that the defendant's misrepresentation or

6    nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct.").

7         As to Plaintiff's claim of injury related to the initial charge of $149.99, that injury is not

8    covered by the ARL. The ARL has no requirement to disclose the *initial* charge to the consumer.

9    Rather, the "automatic renewal offer terms" disclosures must include "[t]he *recurring charges* that

10   will be charged to the consumer's credit or debit card or payment account with a third party as part

11   of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that

12   is the case, and the amount to which the charge will change, if known." Cal. Bus. & Prof. Code §

13   17601(b)(2) (emphasis added). Plaintiff's error regarding his initial charge is simply not redressable

14   under the ARL (and consequently the UCL). Violation of the ARL did not cause Plaintiff's injury.

15        In short, Plaintiff's allegations regarding FloSports' inadequate disclosure of automatic

16   renewal terms are irrelevant because he has not suffered an injury stemming from an automatically

17   renewing charge. "It is not enough that a plaintiff lost money; to have standing, there must be a

18   causal link between the unlawful practice and the loss." *Mayron v. Google LLC*, 54 Cal. App. 5th

19   566, 574 (2020) (affirming dismissal of plaintiff's ARL claim); *Rutter v. Apple Inc.*, No. 21-CV-

20   04077-HSG, 2022 WL 1443336, at *6 (N.D. Cal. May 6, 2022) (holding that plaintiffs had no

21   standing to assert technical violations of the ARL where they had not "plausibly allege[d] that they

22   suffered their economic injuries by relying on that statutory violation.").

23        **2.    Plaintiff Cannot Satisfy the Reasonable Consumer Standard.**

24        To be sure, Plaintiff also claims that he would not have purchased a subscription to FloSports

25   if he had known that the subscription was for a year or that it would auto-renew on a yearly basis.[5]

26

27   ────────────
     [5] Of course, Plaintiff concedes that he knew the subscription had auto-renewing features, at least
28   on a monthly basis.

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT/ CASE NO. 3:22-CV-04920-JSC**

Compl., ¶ 6. These allegations are not only belied by the facts, but his "belief" as to what he was signing up for is unreasonable because of such facts.

Claims of misrepresentation under the CLRA, UCL, and the FAL are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived." *Id.* (internal citations omitted). This requires the plaintiff to "plead facts showing that a significant portion of the general consuming public . . ., acting reasonably in the circumstances, could be misled." *Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1111 (N.D. Cal. 2020) (internal citation omitted). This standard is objective. *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 399 (N.D. Cal. 2021). And, where "tech-savvy consumers [are] targeted," they can be expected to know certain things about the relevant technology. *Baird v. Samsung Elecs. Am., Inc.*, 522 F. Supp. 3d 679, 688–89 (N.D. Cal. 2021).[6]

First, Plaintiff cannot dispute that the checkout page referred to a <u>yearly</u> service, which page stated he would be charged "12.49/mo; $149.99 Paid Yearly" and that "By clicking Start Watching, you will be charged $149.99 today for the first year." Compl., ¶ 35.

Second, FloSports stated: "Your annual subscription will automatically renew . . .," the specific date on which the subscription will renew, and "each year thereafter until you cancel." Plaintiff claims he did not know that this language referred to *his* order. Compl., ¶ 38. This is blatantly unreasonable. Courts do not evaluate the reasonableness standard subjectively, nor do they apply the "least sophisticated" consumer test. *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (2003) ("California and federal courts applying the UCL have never applied a 'least sophisticated consumer standard' . . .. Rather, they have consistently applied a standard closer to an ordinary or 'reasonable consumer' standard to evaluate unfair advertising claims.").

Third, Plaintiff admits that the Terms are further hyperlinked on the checkout page, in bold red font, which clearly lay out the relevant terms of the order. Plaintiff does not allege that he was

---

[6] Because the same standard governs the UCL, FAL, and CLRA, courts often analyze claims under the three statutes together. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1063–64 (N.D. Cal. 2017) (same).

1
unaware of the Terms. Plaintiff's claim that he was not asked to read or affirmatively agree
2
separately to the Terms is a red herring, as no such requirement exists under California law. *See*
3
*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) (plaintiff was on inquiry
4
notice of terms and conditions where hyperlinked terms "readily apparent" and the customer
5
manifests intent to assent to the terms by "clicking a button"). In addition, Plaintiff admitted in an
6
email to FloSports that he read the Terms before checking out. Erturk Decl., Ex. 2.

7
Indeed, Plaintiff also acknowledged via email that he understood that he had subscribed to
8
an auto-renewing service, but had intended to try it out "month to month."[7] Thus, there was never
9
any reasonable doubt from the website or in Plaintiff's mind that FloSports was offering a service
10
that would also automatically renew at the end of the prescribed period. Therefore, Plaintiff cannot
11
show reasonable reliance on the alleged lack of clear and conspicuous disclosures regarding yearly
12
recurring charges. *See, e.g.*, *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1075 (N.D. Cal.
13
2014) ("[T]o adequately plead a CLRA claim, a plaintiff must allege that she relied on the
14
defendant's alleged misrepresentation and that she suffered economic injury as a result."); *Great*
15
*Pacific Sec. v. Barclays Capital, Inc.*, 743 F. App'x. 780, 783 (9th Cir. 2018) ("Plaintiffs alleging
16
claims under the FAL and UCL are required to plead and prove actual reliance on the
17
misrepresentations or omissions at issue.") (citing *Kwikset*, 51 Cal. 4th at 326–27).

18
Further, to the extent FloSports' disclosures were insufficient under the ARL or the
19
reasonable consumer test, they did not result in injury to Plaintiff because FloSports promptly and
20
directly offered to change Plaintiff's subscription to month-to-month at his request, and to refund
21
Plaintiff the difference in what he paid. Plaintiff never responded to FloSports' email. In doing so,
22
FloSports attempted to provide Plaintiff with *precisely* what he claims he sought – an opportunity
23
to try FloSports' service "month to month." Accordingly, any "injury" to Plaintiff could result only
24
from his failure to confirm his choice, and is of his own making and not caused by FloSports. *See*
25
Erturk Decl., Ex. 2.

26
27
28
[7] The Complaint likewise concedes that FloSports "misleads consumers into believing that they would be paying a *monthly charge*," contradicting Plaintiff's claim that he was unaware that FloSports offers a recurring subscription. Compl., ¶ 89 (emphasis added).

1

### B.    FloSports Complied With the ARL.

2

3

Even if the Court finds that Plaintiff can plead noncompliance with the ARL to support his UCL, FAL and CLRA claims despite his subscription not being renewed, Plaintiff has not actually pled a viable ARL claim to begin with.

4

5

6

#### 1.    FloSports Disclosed the Terms of Its Automatically Renewing Membership in Close Proximity to Its Request for Consent.

7

The ARL requires that businesses present the autorenewal offer terms in a "clear and conspicuous manner" and in "visual proximity" to the request for consent before the agreement is completed. *Id.* § 17601(b)(1)–(5). The terms of the offer must include (A) that the subscription will continue until the consumer cancels; (B) the description of the cancellation policy that applies to the offer; (C) the amount the customer will be charged, and that the amount of the charge may change, if true, and the amount to which the charge will change, if known; (D) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (E) the minimum purchase obligation (if any). Offer terms are "clear and conspicuous" when they are: in larger type than the surrounding text; or in contrasting type, font, or color to the surrounding text of the same size; or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language. *Id.* § 17601(c). The Ninth Circuit has held that the statute requires "visual proximity," not immediate adjacency, between the "automatic renewal offer terms" and "the request for consent." *Hall v. Time, Inc*., 857 Fed. Appx. 385, 385–86 (9th Cir. 2021).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

Here, the fact that FloSports inserted a link to the Terms in bold, red font in visual proximity to the "Start Watching" button ends the inquiry. The link itself is sufficiently conspicuous and the Ninth Circuit has recognized that sufficiently linked terms bound a consumer as though the terms were disclosed on the first page itself. *See Houtchens v. Google LLC*, No. 22-CV-02638-BLF, 2022 WL 17736778, at *4 (N.D. Cal. Dec. 16, 2022) (finding plaintiff bound by hyperlinked terms of service where the terms were presented in blue text, they were next to the accept box, and the screen on which they appeared was uncluttered). Plaintiff does not dispute that the Terms contain all necessary disclosures.

22

23

24

25

26

27

28

18

1    In addition, FloSports explicitly disclosed to Plaintiff on the checkout page that: (A)

2    Plaintiff's card would be charged $149.99, (B) that it was an annual subscription, (C) that the

3    subscription would automatically renew on a yearly basis "until you cancel", and (D) linked to the

4    cancellation policy via a contrasting red, bolded hyperlink which Plaintiff himself admits he saw.

5    The disclosures were in a separate paragraph, above the click to consent button, and bounded by

6    another box above which separated the text from the other information on the page. The text was in

7    simple language that was easy to understand. And the largest word on the checkout page is

8    "**ANNUAL**," which is set off from the surrounding text by its large font size, bolded and in all caps.

9    Accordingly, FloSports complied with the clear and conspicuous disclosure requirement. *See Hall*

10   *v. Time, Inc*., No. SACV1901153CJCADSX, 2020 WL 2303088, at *2–5 (C.D. Cal. Mar. 13, 2020),

11   *aff'd*, No. 20-55354, 2021 WL 2071991 (9th Cir. May 24, 2021) (rejecting ARL violation "because

12   that notice was placed directly above the 'checkout now' button, which Plaintiff clicked to proceed

13   with her subscription, it was conspicuous"); *Gershfeld v. Teamviewer US, Inc*., No.

14   SACV2100058CJCADSX, 2021 WL 3046775, at *3–4 (C.D. Cal. June 24, 2021) (finding no ARL

15   violation as a matter of law).

16           **2.      FloSports Obtained Affirmative Consent Prior to Completing the**

17                     **Transaction.**

18          The ARL requires that businesses obtain customers' affirmative consent prior to enrolling

19   them in an automatically renewing program. Cal. Bus. & Prof. Code § 17602(a)(2). The ARL does

20   not define the phrase "affirmative consent." Plaintiff contends that this requirement requires a

21   separate step. Compl., ¶ 36 (alleging that FloSports' process "never requires the individual to read

22   or affirmatively agree to any terms of service, i.e., by requiring consumers to click a checkbox next

23   to the automatic renewal offer terms"). The Ninth Circuit has rejected this interpretation, stating

24   "Had the legislature intended to require a consumer's affirmative consent to the automatic renewal

25   terms specifically," then the statute would state this. *Hall*, 857 Fed. Appx. 385. Instead, the

26   consumer may simply indicate consent by affirmatively assenting to the transaction as a whole. *Id*.

27          Here, FloSports clearly stated that clicking the "Start Watching" button would bind Plaintiff

28   to the agreement, which Plaintiff affirmatively clicked to place his order. The text immediately

19

above states, "By clicking Start Watching, you will be charged . . ." Accordingly, FloSports obtained Plaintiff's affirmative consent and fully complied with this requirement. *Id.* (affirming dismissal of claim where plaintiff clicked through the automatic renewal agreement before purchasing a magazine subscription); *Rutter*, 2022 WL 1443336, at *5 (dismissing claim where plaintiffs were put on notice by the terms and conditions before agreeing to update storage).

### 3.   FloSports Provided Retainable Acknowledgement of the Offer Terms.

Under the ARL, businesses must provide the consumer with an acknowledgement that is "capable of being retained by the consumer" and which includes (a) the offer's terms; (b) the cancellation policy; and (c) information about how to cancel. Cal. Bus. & Prof. Code § 17602(a)(3). The acknowledgement may be provided at any time so long as it is before renewal and is capable of being retained—thus, it may be provided at the time of the order through a link or after the completion of the initial order. *Id.* § 17602(e)(1). *Rutter*, 2022 WL 1443336, at *7 (Terms and Conditions which provided users with a cancellation policy and a description of where and how they can cancel the service was sufficient "acknowledgement" under Section 17602(a)(3)); *Hall*, 857 Fed. Appx. 385 (finding that reminder email sent to consumer a month before automatic renewal complied with this step); *Gershfeld*, 2021 WL 3046775, at *3–4 (finding acknowledgement sent two months before automatic renewal sufficient). In other words, Plaintiff's complaint that an acknowledgement was not sent after his order was placed is of no consequence; the ARL does not require "post-purchase" disclosures. *See* Bus. & Prof. Code § 17602(e)(1) ("The requirements of this article shall apply only prior to the completion of the initial order for the automatic renewal or continuous service, except ... [t]he requirement in paragraph (3) of subdivision (a) **may be fulfilled after completion of the initial order**.") (emphasis added).

Here, by linking directly to the subscription terms via the bolded red "click here" text, FloSports provided the requisite acknowledgement, including the cancellation policy, in easily printable form.[8] *See Rutter*, 2022 WL 1443336, at *7 (finding linked Terms sufficient to satisfy this requirement); *Houtchens*, 2022 WL 17736778, at *4. Indeed, FloSports' "Terms of Service" page provides detailed information about the terms of automatic renewals. *See* Erturk Decl., Ex. 1; *Rutter*,

---

[8] Plaintiff could also easily save the Terms as a PDF.

2022 WL 1443336, at *4–7 (finding cancellation terms clear and conspicuous in the iCloud Terms and Conditions webpage and thus fulfilling Bus. & Prof. Code § 17602(e)(1)).

### 4.    FloSports Complied with The ARL In Good Faith.

The ARL allows defendants to raise a "good faith" defense. Specifically, a defendant will not be liable for violation of the ARL if it attempted to comply with the law in "good faith." Cal. Bus. & Prof. Code § 17604(b) ("If a business complies with the provisions of this article in good faith, it shall not be subject to civil remedies"); *see also Jenkins v. j2 Glob., Inc*., No. 13-9226, 2014 WL 12687417, at *5 (C.D. Cal. May 23, 2014) ("This safe harbor, if successfully proven, is [also] an absolute bar to Plaintiff's recovery on the UCL cause of action."); *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1073 (S.D. Cal. 2018).

To the extent that FloSports' disclosures or acknowledgements failed to comply to the ARL in minor, technical respects, it is protected by the ARL's good faith defense, which only requires "substantial compliance" with the ARL terms. *See Roz v. Nestle Waters N. Am., Inc*., No. 216CV04418SVWJEM, 2017 WL 6942661, at *3 (C.D. Cal. Dec. 6, 2017) (holding that the good faith defense in Cal. Bus. & Prof. Code § 17604(b) only requires businesses to show they "substantially" complied with the ARL). Accordingly, FloSports cannot be liable under the UCL, FAL and CLRA for violating the ARL.

### C.    Plaintiff's Conversion Claim Fails.

Plaintiff's conversion claim fails for the same reason that he cannot establish a violation of the ARL, FAL, CLRA, or UCL. Plaintiff claims that FloSports charged his card "without authorization and in violation of California law" and that as a result, "Defendant has taken money that belongs to Plaintiff." Compl., ¶ 81. Plaintiff does not plausibly plead that the charge to his credit card was unauthorized because he affirmatively agreed to pay $149.99 after being fully appraised of the payment amount *twice*. Indeed, he admits that the offer at the very least suggests only a one-time payment of $149.99. *Id.* at ¶ 19 (referring to the reference of $149.99 and alleging that checkout page states that consumers are "agreeing to a single charge to be placed that day."). Further, since Plaintiff never paid for the subsequent year, he was never deprived of money or property for a recurring charge. In either case, his claim does not sound in conversion.

1    Plaintiff's conversion claim conflates statutory and common law, but "where a statute

2    creates a right that did not exist at common law and provides a comprehensive and detailed remedial

3    scheme for its enforcement, the statutory remedy is exclusive." *Rojo v. Kliger*, 52 Cal.3d 65, 79

4    (1990) (citations omitted). Here, the ARL, UCL, CLRA, and FAL provide statutory remedies for

5    alleged consumer misrepresentations and the required disclosures of automatically renewing

6    subscriptions. *See Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1010 (ND. Cal. 2007)

7    (rejecting conversion claim for alleged statutory injury).

8    Likewise, Plaintiff cannot plead conversion where there is a contractual agreement

9    underpinning Plaintiff and FloSports' payment terms and Plaintiff's assent to those terms. *See Voris*

10   *v. Lampert*, 7 Cal. 5th 1141, 1156 (2019) (finding no conversion claim for statutory labor code

11   violation because it was "a type of claim that has long been understood to sound in contract, rather

12   than as the tort of conversion"); *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 451–52

13   (1997) (no conversion claim based on contractual rights).

14       **D.    Plaintiff's Claim for Unjust Enrichment Fails.**

15   There is no "standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial*

16   *Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015); *McBride v. Boughton*, 123 Cal. App. 4th 379, 387

17   (2004) ("unjust enrichment is "not a cause of action ... or even a remedy."); *Robbins v. PlushCare,*

18   *Inc*., No. 21-CV-03444-MMC, 2022 WL 2988344, at *2 (N.D. Cal. July 28, 2022) (dismissing

19   unjust enrichment claim included in ARL complaint); *Turnier v. Bed Bath & Beyond Inc.*, 517 F.

20   Supp. 3d 1132, 1140–1141 (S.D. Cal. 2021) (same).

21   Moreover, unjust enrichment is not available, as here, "when an enforceable, binding

22   agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp*., 96

23   F.3d 1151, 1167 (9th Cir. 1996). Finally, courts often dismiss unjust enrichment as duplicative of

24   other claims. *Rice-Sherman v. Big Heart Pet Brands, Inc*., 2020 WL 1245130, at *14 (N.D. Cal.

25   Mar. 16, 2020) (dismissing duplicative unjust enrichment claims where plaintiffs brought claims

26   under the UCL and CLRA based the same factual predicates); *In re Apple & AT&T iPad Unlimited*

27   *Data Plan Litig*., 802 F. Supp. 2d 1070, 1077 (N.D. 2011) (holding "plaintiffs cannot assert unjust

28   enrichment claims that are merely duplicative of statutory or tort claims") (citing cases).

**E.      Plaintiff Has No Standing to Seek Injunctive Relief.**

Plaintiff's prayer seeks an injunction against FloSports in addition to damages. However, the Complaint does not state facts that would entitle him to an injunction. "To have standing to obtain injunctive relief, a plaintiff must allege that a 'real or immediate threat' exists that he will be wronged again." *Rahman v. Mott's LLP*, No. CV 13-3482 SI, 2014 WL 5282106, at *5 (N.D. Cal. Oct. 14, 2014). As the Ninth Circuit has explained, "[t]hough 'a previously deceived plaintiff . . . may have standing to seek injunctive relief,' the plaintiff must still show 'that she faces an imminent or actual threat of future harm caused by [the defendant's] allegedly false advertising.'" *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 590–591 (9th Cir. 2018) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018)).

Here, Plaintiff has not pled any allegations sufficient to show that he faces an immediate threat of a repeat injury and thus has no standing to seek an injunction. *Arnold v. Hearst Magazine Media, Inc.*, No. 19-CV-1969-WQH-MDD, 2021 WL 488343, at *7–8 (S.D. Cal. Feb. 10, 2021) (dismissing injunctive relief where no risk of future injury under ARL). As such, his request for an injunction fails as a matter of law.

**V.      CONCLUSION**

For the reasons stated herein, Defendant FloSports respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

DATED:  January 13, 2023                    BLANK ROME LLP

By: */s/ Ana Tagvoryan*
Ana Tagvoryan
Erica R. Graves
*Attorneys for Defendant*
FLOSPORTS, INC.